IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| FREDERICK "LANCE" ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:06-CV-116 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 23] will be granted, and plaintiff's pending motions will be denied.[1] The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff carries diagnoses of bipolar disorder and alcohol dependency. [Tr. 254]. He applied for benefits in October 2003, claiming to be disabled by bipolar disorder,

---

[1] *Pro se* plaintiff has filed a "Motion to Expedite" [doc. 21] and a "Motion for Judgment" [doc. 25]. The court will construe these documents together as a motion for summary judgment.

schizophrenia, and anxiety. [Tr. 51, 58]. Plaintiff originally alleged a disability onset date of October 1, 2000. [Tr. 51]. His applications were denied initially and on reconsideration. He then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on March 23, 2005.[2]

On June 3, 2005, the ALJ issued a decision denying benefits. The ALJ found that, absent his "well-documented alcohol abuse," plaintiff suffers from no severe impairment. [Tr. 15-19].[3] Citing "abundant evidence in the record that the claimant lacks credibility," the ALJ concluded that plaintiff retains the residual functional capacity to perform his past relevant work as a carpenter or deli helper. [Tr. 17-18]. Plaintiff was accordingly found "not disabled."

Plaintiff then sought review from the Commissioner's Appeals Council. Review was denied on March 17, 2006, notwithstanding the submission of additional medical evidence. [Tr. 5, 8]. The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through his timely complaint, plaintiff has properly brought his case before this court for review. *See* 42 U.S.C. § 405(g).[4]

---

[2] At the hearing, plaintiff amended his alleged disability onset date to February 3, 2003. [Tr. 543-44].

[3] "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).

[4] Plaintiff was represented by an attorney before both the ALJ and the Appeals Council. He appears before this court *pro se*.

II.

*Relevant Background*

Plaintiff was born in 1962 and has a high school equivalency degree. [Tr. 51, 64]. He is admittedly able to play computer games up to thirty minutes at a time [Tr. 86], work three to four hours, once or twice per week, for his landlord [Tr. 87, 543-44], and shop independently "sometimes" for groceries [Tr. 90] and beer [Tr. 442].

Plaintiff claims to have "bad days when alcohol isn't even in the equasion [sic]." [Doc. 21, p. 2]. He contends that "I am disabled anyway without reliance on any substance use or misuse. I have always been honest about this[.]" [Doc. 25, p. 2]. Due to his purported disability, plaintiff states that "work is the furthest thing from my mind." [Tr. 71].

III.

*Expert Testimony*

Dr. Edward Griffin appeared as a medical expert at the administrative hearing. Dr. Griffin testified that plaintiff has "no physical limitations." [Tr. 548].

Dr. Thomas Schacht also appeared as a medical expert. Based on plaintiff's continued alcohol consumption, and his self-reporting of the beneficial effects of certain medications (when in compliance), Dr. Schacht identified no psychological limitations in the absence of drug and alcohol abuse. [Tr. 549-51, 558-562].

Lastly, vocational expert Cathy Sanders testified at the administrative hearing. The ALJ hypothesized a claimant restricted to "simple work" with "no other limitations." [Tr. 562-63]. Ms. Sanders responded that the hypothetical claimant could return to plaintiff's prior deli helper and carpenter jobs. [Tr. 563]. Conversely, if the extremely restrictive mental assessment generated by plaintiff's former nurse practitioner [Tr. 370-71] was fully credited, all employment would be precluded. [Tr. 564].

IV.

*Applicable Legal Standards*

This court's review is confined to whether the ALJ applied the correct legal standards and whether his factual findings were supported by substantial evidence. 42 U.S.C. § 405(g); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).

A claimant is entitled to disability insurance payments if he (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application

for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).[5] Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

---

[5] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters*, 127 F.3d at 529 (citing 20 C.F.R. § 404.1520 (1997)). Plaintiffs bear the burden of proof during the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

V.

*Analysis*

The primary issue in this appeal is the interplay between plaintiff's alcoholism and his mental health. In addition, plaintiff makes cursory reference to physical pain and to a matter ("broken bones") referenced in the evidence that he first submitted to the Appeals Council. Under typical circumstances, the court would deem these two additional issues waived due the meager briefing on both points. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). However, in deference to plaintiff's *pro se* status, the court will briefly address both matters before turning to the core issue of plaintiff's psychological capacity.[6]

---

[6] The court notes one other recurring theme, plaintiff's argument that he is unable to afford adequate health care. [Docs. 3, 21, 25; Tr. 268, 460]. Plaintiff is, however, able to fund his continuing consumption of alcohol (as many as 24 beers per day) and cigarettes (generally between two and three packs per day). [Tr. 86, 125, 147, 278, 286, 307, 373]. In light of these expenditures, plaintiff's contention regarding the affordability of health care "simply fails the straight face test." *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 977 (M.D. Tenn. 2002).

A. Physical Impairment

The ALJ concluded, "The claimant does not have any documented severe physical impairment imposing work restrictions, and this is not alleged. . . . [T]he claimant has the residual functional capacity to perform jobs at all exertional levels." [Tr. 15]. To the Appeals Council, plaintiff's erstwhile attorney argued - without explanation - that the ALJ "fail[ed] to properly recognize pain[.]" [Tr. 10]. To this court, plaintiff argues that the ALJ "failed to properly recognize physical . . . pain and disabilities." [Doc. 25, p. 2]. He further references "breathing disorders," high cholesterol, and hypertension. [Doc. 25, p. 4].

The court first notes that substantial evidence supports the ALJ's conclusion that plaintiff never alleged any physical impairment. No purported physical disability is cited in plaintiff's post-hearing brief to the ALJ. [Tr. 459-60]. The same is true for his application and Disability Reports. [Tr. 58, 70-71, 76].

Nonetheless, the court has reviewed the objective evidence pertaining to plaintiff's physical health. Although there has been sporadic treatment for hypertension and high cholesterol, no physician has noted any vocational limitation caused by either condition. Further, a September 2003 back examination was within normal limits. [Tr. 284]. Examining physician Vinaya Belagode noted, "Review of systems [was] negative other than behavioral difficulties." [Tr. 287]. A February 2004 cardiac stress test was "normal" [Tr. 396], as were September 2004 x-rays of the lumbar spine. [Tr. 433].[7] January 2005 x-

[7] The lumbar x-rays were taken on the same day that plaintiff complained to his then-mental (continued...)

rays of the cervical spine showed only minor spondylotic changes. [Tr. 431]. Having reviewed this evidence, medical advisor Dr. Griffin testified that there are "no physical limitations." [Tr. 548].

Lastly, the May 14, 2004 notes of treating physician Warren Jones show a phone call received that date from plaintiff in which, "[Patient] is wanting to see if Jones will write him a letter stating that in his professional opinion [patient] cannot maintain full time employment at this time." Dr. Jones declined, stating that any such letter "must come from his psychiatrist." [Tr. 112].

In sum, the administrative record contains substantial evidence supporting the conclusion that plaintiff has no physical impairment. Further, plaintiff's subjective complaints pertaining to breathing disorders are not supported by the objective record and, as he smokes as many as three packs of cigarettes per day, cannot be taken seriously.

B. Sentence Six

Plaintiff, through counsel, submitted additional medical records to the Appeals Council. The evidence was considered but the request for review was denied.

"[W]here the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citation

---

[7](...continued)
health counselor that he was suffering from "excruciating" back pain. [Tr. 448].

omitted). This court can, however, remand a case for further administrative proceedings, but only if the claimant shows that his evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). *Id.* In other words, sentence six mandates that before a claim will be remanded for consideration of additional evidence: there must be new evidence presented; that evidence must be material; and there must be good cause for the failure to present it at the hearing level. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). The claimant bears the burden of proof. *Id.*

The court has reviewed plaintiff's late-submitted records. That evidence shows

> 1. An August 2005 ankle injury secondary to stepping in a hole. Plaintiff was described as "healthy-appearing" and "giv[ing] a very poor effort[.]" According to the notes of Dr. Steven Krein, plaintiff was "requesting narcotic pain medication today, but his request is denied." [Tr. 540].
>
> 2. A 2005 rib injury secondary to falling on stairs. X-rays showed the ribs to be "intact and within normal limits." [Tr. 537]. Dr. Jones "discussed [his] concerns with narcotics and his history of alcohol use." [Tr. 539].
>
> 3. A September 2005 chest x-ray showing "no acute abnormality." [Tr. 538].
>
> 4. Plaintiff's September 2005 report to Dr. Jones that he was "doing much better" emotionally, with certain medications "working well for him." [Tr. 533].
>
> 5. A physical therapist diagnosis of "slight malalignment at the C6-C7 cervical vertebrae" and possible carpal tunnel syndrome of the left wrist. [Tr. 527]. Plaintiff was prescribed physical therapy [Tr. 527], for which he was a repeated no-show [Tr. 529-30] resulting in his discharge from the program. [Tr. 531].

This evidence documents no severe impairment lasting, or expected to last, for at least a period of twelve continuous months. The evidence does not satisfy sentence six's

materiality requirement. To show materiality, a claimant must demonstrate a "reasonable probability" that the ALJ would have reached a different decision if presented with the new evidence. *Sizemore,* 865 F.2d at 711. Cumulative evidence is not "material." *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990).

The court does not find a reasonable probability that the ALJ would have reached a different conclusion regarding any purported impairment, or regarding plaintiff's credibility as a whole, if presented with the new evidence. Sentence six remand is unwarranted in this case.

C. Psychological Impairments

The court now turns to the ALJ's related conclusions: (1) that absent his "well documented alcohol abuse," plaintiff suffers from no severe mental impairment [Tr. 15-19]; and (2) that "[t]he claimant's allegations of disabling symptoms are not credible and are not supported by the evidence." [Tr. 18]. Plaintiff argues that the ALJ was in error because, "I am disabled anyway without reliance on any substance use or misuse. I have always been honest about this . . . . I am an honest man[.]" [Doc. 25, p. 2, 4].

The effect of plaintiff's alcoholism on his mental health is both obvious and unfortunate. His tendency to misrepresent and understate his alcohol consumption is equally apparent. As such, the court has no difficulty finding substantial evidence to support the ALJ's conclusions.

In August 1999, plaintiff told Dr. Margaret Robbins that he drank only "an *occasional* Zima . . . [or] an *occasional* wine cooler." [Tr. 235] (emphasis added).[8] Later that month, however, he called Dr. Robbins's emergency pager because "he was struggling with his withdrawal from . . . using the wine coolers on a *regular* basis[.]" [Tr. 232]. In another presentation of the facts, in November 1999 plaintiff told treating physician Jones that he had "not had *any* alcohol since March." [Tr. 182].

In January 2000, plaintiff told Dr. Robbins that he had remained completely sober from alcohol since October 1999. [Tr. 226]. On April 10, he told Dr. Jones he had "completely cut out all alcohol." [Tr. 180]. It is noteworthy, however, that plaintiff's mother passed away five days prior. [Tr. 219]. Subsequently reflecting on that event to Dr. Robbins, plaintiff stated that he had been "too drunk to notice" her death. [Tr. 218].

On May 18, 2000, during a brief period of purported sobriety, Dr. Jones wrote that plaintiff

> is taking his medication as prescribed to the best of my knowledge. . . . He appears in good physical condition which is consistent with his report that he is working his construction job long hours and very productively at the present time. . . .
>
> . . . This is a client who has maintained sobriety from alcohol and has become consequently very productive at work as per his report. Wife confirms.

[Tr. 225].

[8] Unless otherwise noted, all subsequent emphases have been added by the court.

In August 2000, Dr. Jones wrote that, "He has had no alcohol in any form by his report." [Tr. 174]. However, by September 2000, Dr. Robbins's records reflect that,

> Client presents today with a smell of alcohol and appearing drunk. His speech is slurred. . . . [H]e appears very disheveled. . . . I reviewed with him that I will be unable to give him Benzodiazepines with him using alcohol and he has stated, 'That is the only damn thing that helps me.' . . .
>
> . . . He states, 'Two beers when I feel bad isn't too bad, Doc. It really isn't too bad'. Client's behavior today suggests otherwise.
>
> . . . Client states he feels he can control his alcohol pattern. He insists that he is not addicted to either alcohol or Valium and that he will be able to stop both without any problems or any difficulties with withdrawals or any help from any providers whatsoever. . . .
>
> . . .
>
> . . . I do not have any evidence that he has ever had serious detoxification from either alcohol or Benzodiazepines.

[Tr. 223-24]. In mid-October 2000, Dr. Jones and Dr. Robbins referred plaintiff for inpatient treatment at Indian Path Hospital and Pavilion ("Indian Path"). [Tr. 239]. Plaintiff subsequently told Dr. Curtis Kauffman that he "began drinking at 14 *and drank heavily until" this hospitalization*. [Tr. 450].

On January 26, 2001, Dr. Jones wrote, "He smelled of alcohol and finally admitted to having had some beer with his lunch. He has been advised against mixing beer with his current medications." [Tr. 160]. Five weeks later, Dr. Kauffman noted that plaintiff "states he . . . realizes alcohol has ruined his life." [Tr. 450]. On March 12, plaintiff was jailed for DUI. [Tr. 219]. On March 17, he returned to the Sullivan County Correctional

Facility "smell[ing] of alcohol and crying." [Tr. 466]. From March 26 to April 11, plaintiff was again admitted to Indian Path. According to the staff notes, however, he was discharged because he "was unable to maintain sobriety during his admission. Obtained his 5th DUI offense and was jailed" until June of the following year. [Tr. 244, 270, 461].

On August 22, 2002, Dr. Lorency Fernando wrote, "He reports his longest period of sobriety was 15 months when he was in jail." [Tr. 271]. Plaintiff was admittedly drinking three beers every three to four days and was "strongly advised to discontinue alcohol use and attend AA meetings at this time." [Tr. 271]. He was described as alert but disheveled, purportedly unable to function at his job, and he was not on medication. [Tr. 269-71].

Plaintiff then resumed medication and told Dr. Fernando in September 2002 that he was "doing much better[.]" [Tr. 266]. By November 2002, plaintiff was again working and "report[ed] that he is taking his medications as prescribed and they do seem to be helping him." [Tr. 263]. His last alcohol use was purportedly four days prior. [Tr. 263].

On July 7, 2003 (five months after his alleged disability onset date), Dr. Jones recorded, "He has been noncompliant with the [bipolar medication] Zyprexa and has been drinking alcohol daily." [Tr. 151]. Eight days later, Dr. Jones noted that plaintiff was consuming between six and twenty-four beers per day and was seeking treatment for nausea and vomiting. [Tr. 147].

On July 15, 2003, nurse Kathleen Walker wrote, "He says he is still struggling with alcohol dependency. . . . He says he realizes that he has lost everything because of that. . . . He says he has been drinking since he was age 11 and he *has never completely stopped since that time*." [Tr. 259]. Plaintiff had not been in counseling since the prior November and was not taking his bipolar medication because he had misplaced his prescription. [Tr. 259-60].

On July 29, 2003, although acknowledging that he "hasn't had a significantly sustained period of sobriety for quite some time," plaintiff alleged to nurse Walker that he had not gotten drunk in the prior two weeks. [Tr. 257]. However, upon his September 2003 readmission to Indian Path (with complaints of anxiety and depression), plaintiff reported drinking between twelve and twenty-four cans of beer *every other day for the past six months*. [Tr. 277-78]. To an Indian Path counselor the following month, he denied having a drinking problem and the counselor noted plaintiff's "poor insight" *regarding the correlation between his alcoholism and his mood*. [Tr. 296].

On October 29, 2003, plaintiff told an Indian Path doctor that Xanax was providing a "wonderful" benefit. [Tr. 298]. However, by November 5, nurse Walker noted that Indian Path had discontinued the Xanax prescription due to alcohol abuse. [Tr. 251]. The notes from plaintiff's appointment that date further reveal that

> he reeked of alcohol. When I asked him about whether or not he had been drinking, he said no, but he said he had been drinking . . . the past couple of days, but not today. . . . He denies that there was any association with his depression and his alcohol dependency.
>
> . . .
>
> . . . Why they [Indian Path] ever started him back on that [Xanax] because he has an extensive history of alcohol dependency [sic]. [Plaintiff was "quite upset" with nurse Walker for not restoring his Xanax because] he felt it was the only thing that calmed him down and helped him with his panic attacks.
>
> I asked him whether he has been compliant with his other psychotropic medication and he says he has. I'm not sure how reliable that is. I asked him if he had gotten any bloodwork when he was at [Indian Path] and he wasn't able to relate that to me because he was pretty intoxicated. . . .
>
> He said he was sick and tired of people not giving him the medication he needs when we know it is helpful for him. He doesn't understand why there is any contraindication with the Xanax, even though he has alcohol dependency and has not maintained any significant period of sobriety. I, again, explained to him the potential lethal interaction with the Xanax and his alcohol use. He states that he would try to get the Xanax from [Indian Path].
>
> . . .
> . . . He has very poor insight and judgment because of his alcohol intoxication[.]

[Tr. 251-52].

At yet another admission to Indian Path two days later, plaintiff admitted to Dr. Melanie Conway that he had consumed "several beers" prior to admission. [Tr. 307]. Plaintiff was "fairly insistent" and "focused on" getting a renewed Xanax prescription, which Dr. Conway apparently did not provide. [Tr. 307-08, 324]. Dr. Conway described plaintiff as "noncompliant with medications [and] noncompliant with outpatient follow-up." [Tr.

308]. An Indian Path doctor labeled plaintiff an "unreliable historian" due to "inconsistencies." He had recently been discontinued from Indian Path treatment due to alcohol usage, which coincided with increased symptoms of depression and mania. [Tr. 307, 321]. On November 8, he was restarted on the antidepressant Trazodone, which he stated had been helpful in the past. [Tr. 319]. The following day, he advised the Indian Path staff that, "Trazodone is great!" [Tr. 319].

On November 18, 2003, plaintiff was again admitted to Indian Path. [Tr. 324]. He was given medication for "detox symptoms." [Tr. 322]. At discharge, Dr. Conway wrote, "It was difficult for him to accept that he had a problem with alcohol; *in fact, he tended to blame bipolar disorder for any of his problems which were internal*." [Tr. 322].

On December 30, 2003, Elizabeth Jones performed a mental status examination. She described plaintiff as "somewhat evasive in discussing his alcohol use." [Tr. 372]. Plaintiff was inconsistent regarding his number of prior DUIs (both numbers that he provided - two and three - were untrue [Tr. 244]) and he was "somewhat vague" as to why he was currently receiving outpatient mental health treatment. [Tr. 373]. Ms. Jones opined that, if awarded benefits, plaintiff would need assistance in managing his finances "[d]ue to his chronic history of alcohol abuse[.]" [Tr. 377].

On February 3, 2004, Dr. George Davis generated a Mental Residual Functional Capacity Assessment, predicting no limitations of more than a moderate degree. [Tr. 393-95]. Lastly, although he told Dr. Jones on January 31, 2005, that "he has not had

any alcohol since right after Christmas" [Tr. 427], plaintiff admittedly consumed at least four beers on the day before his March 22, 2005 administrative hearing. [Tr. 553].

The above-cited evidence, together with the testimony of Dr. Schacht, provides ample substantial evidence to support the ALJ's conclusion that plaintiff is an unbelievable claimant who has no significant impairment but for his alcoholism. The administrative record also supports the conclusion of Dr. Schacht, as adopted by the ALJ, that plaintiff experiences good response from medication when he is compliant. For example, although he has at times tried to dismiss Lithium as overly sedating [Tr. 269, 552-53], he has elsewhere repeatedly stated that Lithium is beneficial to him "a lot" and that it does not generate side effects. [Tr. 244, 257, 260, 303, 373]. The court further notes that plaintiff at times does not take other beneficial medications either because he misplaces the prescription or because the prescription is discontinued due to contraindication with alcohol abuse.

Plaintiff is displeased that the ALJ did not believe his subjective complaints. As indicated, however, substantial evidence abundantly supports the ALJ's credibility findings. A claimant who offers wildly inconsistent misrepresentations regarding certain issues must accept that he likely will not - and should not - be believed *as to any issue*.

The court's conclusions are in no way swayed by the extreme disabling opinions offered by nurse practitioner Karen DeWitt of Tri-Cities Christian Psychiatry, with whom plaintiff began a treatment relationship on December 29, 2003. On September 2, 2004, FNP DeWitt completed a medical assessment, opining that plaintiff has "no useful

ability to function," or "seriously limited but not precluded" ability, in all of the areas assessed. [Tr. 370-71]. In support, FNP DeWitt cited increasing panic and agoraphobia, along with "very unstable" bipolar disorder. [Tr. 370-71]. The following month, she opined that plaintiff has the serious impairments of bipolar disorder, panic disorder, and "agorophobia" [sic] "independent of any substance abuse." [Tr. 425].

The ALJ correctly dismissed FNP DeWitt's assessments as inconsistent with the record as a whole. [Tr. 17-18]. Further, FNP DeWitt's opinions are of limited value because it is clear that plaintiff never disclosed to her his profound history of substance abuse. Her records indicate plaintiff's report that "[p]rior to treatment for his Bipolar Disorder, he used alcohol in order to calm himself when he was manic; however, his drinking *is rare* at present and *only in moderation*." [Tr. 368]. Plaintiff reported only a single DUI in his past. [Tr. 367-68]. He reported "an honorable discharge" from the military. [Tr. 368].[9]

Plaintiff also told FNP DeWitt that he had never used recreational drugs [Tr. 368], whereas to Dr. Robbins he acknowledged repeated use of marijuana, LSD, and an unknown intravenous drug that rendered him temporarily paralyzed and "dopey." [Tr. 235]. Further, among other dubious statements to FNP DeWitt [Tr. 338, 340, 342, 350, 352, 355, 448], plaintiff told her that he had only consumed one beer in the prior year and that it had

[9] Plaintiff has also termed himself an "honorably discharged veteran" in his filings with this court. [Doc. 21, p. 2]. This statement is at best incomplete and at worst misleading. Plaintiff told Dr. Robbins that "he was at boot camp briefly in the Army . . . . However, his alcohol use interfered. He was given a medical discharge which was honorable after a 2-month period." [Tr. 235].

been five or six years since he was last intoxicated. [Tr. 360]. As a result, FNP DeWitt's file generally contained no diagnosis of substance dependency [Tr. 343, 345, 347, 349, 354, 357, 365, 369] and by June of 2004 she was prescribing Xanax [Tr. 347] despite its contraindication with alcohol.

Eventually, however (months after generating the vocational assessments), FNP DeWitt dismissed plaintiff from her care due to "serious drinking" and his unwillingness to move to a residence where his medication could be monitored. [Tr. 440-41]. This decision closely followed: (1) plaintiff's distressed self-report that he had been arrested for stealing beer; (2) his admitted pairing of beer and Xanax; and (3) a phone call that FNP DeWitt received from plaintiff's neighbor regarding a conflict involving "yelling," "screaming," and a "saw in [either plaintiff's or the neighbor's] hand." [Tr. 440-43]. This treating relationship, viewed in its entirety, shows an unreliable foundation rendering FNP DeWitt's opinions virtually meaningless.

Again, in light of plaintiff's countless misrepresentations and omissions, substantial evidence supports the ALJ's decision to not fully credit *any* of his subjective complaints. Also, as noted by the ALJ, plaintiff's alcohol abuse very likely creates or worsens his other conditions. "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The final decision of the Commissioner will be

affirmed, and an order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan

United States District Judge